UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

SHANNON DILLON, RICHARD THOMAS
AND MEGAN THOMAS                                            PLAINTIFFS

VERSUS                                        CAUSE NO.:   1:21cv109HSO-JCG

CARLEY WAYNE DAVIS, JR.,
LISA NORRIS DAVIS AND
SOLACE HOSPICE INC.                                         DEFENDANTS

**COMPLAINT**
**JURY TRIAL REQUESTED**

COME NOW Shannon Dillon, Richard Thomas and Megan Thomas (Plaintiffs) on behalf of themselves and for the benefit of and on behalf of Defendant Solace Hospice Inc., by and through their counsel of record Rushing & Guice, P.L.L.C., and bring this complaint against Carley Wayne Davis Jr., Lisa Norris Davis and Solace Hospice Inc. and for their good cause of action would state unto the court and give notice of the following, to-wit:

**INTRODUCTION**

1.      This is a Complaint in the nature of a direct action by the majority shareholders of Solace Hospice Inc., a closely held corporation, and a derivative action by the majority shareholders of said corporation. It will be shown herein that Defendants Carley Wayne Davis, Jr. and Lisa Norris Davis (Individual Defendants) entered into an agreement with Plaintiffs to form a corporation in order to operate a hospice in Pearl River County, Mississippi and did, in fact, obtain a license to conduct said business. It will be shown herein that Individual Defendants entered upon a scheme to hijack said business and freeze Plaintiffs out of the control and benefits of the corporate enterprise. It will be shown herein that Individual Defendants have proceeded without corporate

authority, without corporate formality and are in the process of looting the corporation. This complaint seeks both legal remedies and equitable remedies in order to compensate Plaintiffs for their damages and prevent these wrongs from going forward in the future. Furthermore, Plaintiffs seek declaratory relief from this Court pursuant to 28 U.S.C. section 2201 and Federal Rule of Civil Procedure 57.

## PARTIES

2. Plaintiff Shannon Dillon (Shannon) is an adult resident citizen of the State of Louisiana residing at 26415 L Dillon Rd., Angie, LA 70426.

3. Plaintiff Richard Thomas (Rick) is an adult resident citizen of the State of Louisiana residing at 32131 Hwy 62, Franklinton, LA 70438.

4. Plaintiff Megan Thomas (Megan) is an adult resident citizen of the State of Louisiana residing at 32131 Hwy 62, Franklinton, LA 70438.

5. Defendant Carley Wayne Davis, Jr. (Carley) is an adult resident citizen of the State of Mississippi residing at 37 Dykes Rd., Poplarville, MS 39470. Said defendant may be served with process at said address.

6. Defendant Lisa Norris Davis (Lisa) is an adult resident citizen of the State of Mississippi residing at 37 Dykes Rd., Poplarville, MS 39470. Said defendant may be served with process at said address.

7. Defendant Solace Hospice Inc. (Solace Hospice or Corporation) is a corporation organized and existing pursuant to the laws of the State of Mississippi and may be served with process by service upon its registered agent, Carley Wayne Davis, Jr., at its principal office located at 37 Dykes Rd., Poplarville, Mississippi. The principal place of business of Solace Hospice is in Pearl River County, Mississippi.

**JURISDICTION AND VENUE**

8. The United States District Court for the Southern District of Mississippi Southern Division has jurisdiction over this cause pursuant to 28 U.S.C. §1332 as there exists complete diversity between Plaintiffs and Defendants. The amount in controversy exclusive of fees and cost exceeds the sum of $75,000.00.

9. Venue is placed in the United States District Court for the Southern District of Mississippi Southern Division as this is the district and division in which Defendants may be found and in which the cause of action arose.

**STATEMENT OF FACTS**

10. At all times mentioned herein, Rick and Megan are husband and wife. Rick and Megan are registered nurses.

11. At all times mentioned herein Shannon is the aunt of Rick and the owner of Community Care Hospice in Louisiana.

12. At all times mentioned herein Individual Defendants are husband and wife.

13. At all times mentioned herein Individual Defendants owed a fiduciary duty to Plaintiffs.

14. As early as January 2012 Megan began working for Community Care Hospice with Lisa and was joined in April 2015 by Rick.

15. In November 2016 Rick, Megan and Lisa began having conversations about opening an assisted living business in Louisiana, initiated a search for acceptable sites and explored the acquisition of real property.

16. In April 2017 Plaintiffs were approached by Lisa who requested a meeting to discuss the possibility of obtaining a license for hospice in Mississippi as five licenses were going to be made available by the state.

17. Lisa proposed that Megan, Rick, Carley and Shannon go into a partnership with respect to the hospice enterprise. An agreement was reached among the parties that the opportunity pursued in the partnership would consist of three interests, one for the Megan and Rick, one for Carley and Lisa and one for Shannon as Shannon was the financial backer.

18. The plan discussed by the parties was that Shannon would fund most of the money to start the hospice with a one-third ownership in the enterprise, Rick and Megan would receive a one-third ownership and also be employed by the hospice, and Carley and Lisa would also be a one-third owner and would be employed by the hospice and manage the day-to-day operations. The initial plan was for Rick, Megan and Lisa to aid in the growth of the hospice while they continued to work for Community Care Hospice for a period of three (3) to five (5) years.

19. The name of Solace Hospice Inc. was selected for the enterprise and on April 10, 2017 Articles of Incorporation were filed by Carley with the Mississippi Secretary of State. The Articles of Incorporation authorized six shares of common stock. **Exhibit A**.

20. On April 10, 2017 a document titled "Bylaws of Solace Hospice Inc." (Bylaws) were created using RocketLawyer by Individual Defendants. **Exhibit B**. These bylaws were never authorized or signed by the remaining stockholders. These Bylaws contain an electronic signature for Megan. Based upon information and belief Individual Defendants electronically signed the name of Megan to these so-called bylaws.

21. There has never been an organizational meeting of Solace Hospice. Bylaws were never officially adopted. There has never been an election for a Board of Directors of Solace Hospice. There has never been an election of officers of Solace Hospice. There have been no annual meetings of Solace Hospice. Corporate formalities have not been followed.

22. Solace Hospice is a close corporation.

23. On April 11, 2017 an Application for Licensure of Hospice (Application) was hand-delivered to the Mississippi State Department of Health. **Exhibit C**. The Application was signed by Individual Defendants, who certified that "the information and material contained in the foregoing application of license is true, accurate and correct." The Application identified Individual Defendants as 33.3% owners of Solace Hospice, Rick and Megan as 33.3% owners of Solace Hospice and Shannon as a 33.4% owner of Solace Hospice. Attached to the Application were copies of the Articles of Incorporation and Bylaws referenced above.

24. Solace Hospice was awarded a license on or about April 26, 2017. Appropriate personnel were hired and policies and procedures were created.

25. On or about August 14, 2017 the first Solace Hospice patient was admitted.

26. Thereafter application was made to receive Medicare benefits and in October 2017 Solace Hospice received its indemnification number and was advised that it had passed the initial Medicare certification with no deficiencies. The next month Solace Hospice entered into a contract with Pearl River County Hospital to provide inpatient services.

27. Megan commenced marketing of Solace Hospice by purchasing marketing supplies and hosting information functions in Picayune, Mississippi. The marketing continued at all relevant times mentioned herein.

28. At the end of March 2018 Plaintiffs received the first disbursement from Solace Hospice after having worked for 11 months on building the company without any payment or reimbursement.

29. Rick and Megan began working full-time for Solace Hospice on April 1, 2018.

30. In July 2018 Carley approached Lisa, Megan and Rick about the possibility of purchasing a personal care home in Wiggins, Mississippi and reopening same. Shortly thereafter Carley

advised that the personal care home had been purchased. A review of the business records of the Mississippi Secretary of State indicates that Articles of Incorporation were filed for Trinity Manor Inc. on July 23, 2018 authorizing 2 shares of common non-voting stock. **Exhibit D**.

31. Megan and Rick were present as owners of Solace Hospice at the opening of the new Tylertown, Mississippi location in November 2018.

32. In December 2018 Rick, Megan, Carley and Lisa opened Trinity Manor in Wiggins, Mississippi, a personal care home. In March 2019 Dennis Barnett was hired as manager of Trinity Manor and to do marketing as needed.

33. Based upon information and belief, it has been discovered that Solace Hospice received $164,075.00 on May 1, 2020 and $157,630.00 on January 29, 2021 as a result of COVID-19 PPP loans. These loans were never authorized by a Board of Directors or the shareholders and were discovered by Plaintiffs due to a listing of small businesses which received said loans. Plaintiffs have never been advised as to the application of the loan proceeds.

34. In September 2020 Solace Hospice was advised that 52 claims subject to a Medicare audit had been denied with 100% error rate which left Solace Hospice with a fine of $182,041.55.

35. In January 2021 Carley advised that the company reserves were depleted and empty and implemented, without corporate authority either by the shareholders or a Board of Directors, a severe plan of reorganization as well as contracts with medical doctors.

36. At all times mentioned herein Carley has proceeded without appropriate corporate authority either from the shareholders or a Board of Directors. Examples of such actions include entering into contracts which were not approved by a Board of Directors, appointing new positions which were not approved by a Board of Directors, appointing officers which were not approved

by a Board of Directors and organizational changes which were not approved by a Board of Directors.

37. On February 21, 2021 Carley sent a fax to Rick and Megan indicating that he was making organizational changes and would be providing them with a separation agreement because their services were no longer needed. Documents titled "Confidential Separation Agreement and General Release" were given to both Rick and Megan by Carley, who again proceeded without appropriate corporate authority either from the shareholders or a Board of Directors. **Exhibit E**.

38. When Rick and Megan went to the office of Solace Hospice in order to retrieve personal belongings, the locks to the doors had been changed and Carley was outside with a police officer in the parking lot in order to intimidate them.

39. At all times mentioned herein Plaintiffs have been denied full access to the books and records of Solace Hospice. At all times mentioned herein the appropriate financial condition of the corporation and enterprise known as Solace Hospice has not been disclosed to the shareholders.

40. At all times mentioned herein, Carley conspired with Lisa to run, manage and operate Solace Hospice for their own benefit and not for the benefit of the shareholders. Because of the misconduct of Individual Defendants and their failure to comply with their fiduciary and legal obligations, Solace Hospice has suffered serious financial injury.

41. Based upon information and belief, funds have been diverted from Solace Hospice to the personal benefit of Individual Defendants.

42. Individual Defendants have attempted to deprive Plaintiffs of their interest in Solace Hospice and of their interest in the profits and benefits derived therefrom in order to divert same to their benefit.

43. Based upon information and belief, Individual Defendants have mismanaged and negligently operated the business of Solace Hospice.

## DERIVATIVE ACTION/REASONS WHY NOTICE IS NOT REQUIRED

44. A derivative action requires written demand on the corporation and ninety (90) days must pass from the date delivery of the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the ninety-day period. Miss. Code Ann. § 79–4–7.42. Plaintiffs herein allege that irreparable injury to the corporation would result by waiting for the expiration of the ninety-day period as Individual Defendant would continue to misappropriate the assets of Solace Hospice during the ninety-day period.

45. Additionally, for closely held corporations such as Solace Hospice, the Court may treat a derivative action as a direct action and excuse Plaintiffs from the written-demand requirement as long as the Court finds one of the requirements of *Derouen v. Murray*, 604 So. 2d 1086, 1091 n. 2 (Miss. 1992) is met. In this case treating this action raising derivative claims as a direct action will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons. *Derouen,* 604 So.2d at 1091 n. 2. (emphasis added).

## FIRST CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

46. Plaintiffs incorporate by reference the allegations set forth above as though fully restated herein.

47. Individual Defendants were and are required to use their abilities to control and manage Solace Hospice in a fair, just and equitable manner in order to ensure that the Corporation complied with applicable laws and contractual obligations, to refrain from abusing their positions of control,

and not to favor their own interests at the expense of Solace Hospice. Individual Defendants violated their fiduciary duties to Solace Hospice, including without limitation their duties of care, good faith, honesty and loyalty.

48. The wrongful conduct particularized herein was not due to an honest error in judgment, but rather to Individual Defendants' mismanagement, bad faith and/or reckless disregard of the rights and interests of Solace Hospice and its shareholders and for acting without the reasonable and ordinary care which they owed to the Corporation.

49. As a result of the foregoing, Individual Defendants have participated in harming Solace Hospice and have breached fiduciary duties owed to Solace Hospice. Individual Defendants knowingly aided, encouraged, cooperated and/or participated in, and substantially assisted each other in the breaches of their fiduciary duties.

50. By reason of the foregoing, Plaintiffs have sustained and will continue to sustain damages and injuries for which it has no adequate remedy at law as set forth in the damages paragraph below.

## SECOND CAUSE OF ACTION
## CORPORATE WASTE

51. Plaintiffs incorporate by reference the allegations set forth above as though fully restated herein.

52. As alleged in detail Individual Defendants had a fiduciary duty to exercise good faith and diligence in the administration of the affairs of Solace Hospice and in the use and preservation of its property and assets, and the highest obligation of fair dealings.

53. Individual Defendants also wasted Solace Hospice's corporate assets, for example, they diverted corporate assets that were specifically intended for operations for other improper corporate purposes instead of using those corporate assets for their intended purpose.

54. As a result of Individual Defendants' actions, Solace Hospice has suffered losses and incurred substantial costs in investigating and defending itself against pending actions. Solace Hospice also has to incur the substantial costs of conducting internal investigations, as well as the costs of dealing with investigations by regulatory agencies.

55. By reason of the foregoing, Plaintiffs have sustained and will continue to sustain damages and injuries for which it has no adequate remedy at law as set forth in the damages paragraph below.

### THIRD CAUSE OF ACTION
### UNJUST ENRICHMENT

56. Plaintiffs incorporate by reference the allegations set forth above as though fully restated herein.

57. Through the wrongful course of conduct and actions complained of herein, Individual Defendants were unjustly enriched at the expense of and to the detriment of Solace Hospice. The wrongful conduct was continuous and resulted in ongoing harm to Solace Hospice.

58. Plaintiffs as shareholders of Solace Hospice seek restitution from Individual Defendants, and seek an order of this Court disgorging all profits, benefits, and other compensation obtained by Individual Defendants from their wrongful course of conduct and fiduciary breaches.

59. By reason of the foregoing, Plaintiffs have sustained and will continue to sustain damages and injuries for which it has no adequate remedy at law as set forth in the damages paragraph below.

### FOURTH CAUSE OF ACTION
### GROSS MISMANAGEMENT

60. Plaintiffs incorporate by reference the allegations set forth above as though fully restated herein.

61. By their actions alleged herein, Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Solace Hospice in a manner inconsistent with its operations.

62. As a direct and proximate result of Individual Defendants' gross mismanagement and breaches of duty alleged herein, Solace Hospice has sustained significant damages.

63. As a result of the misconduct and breaches of duty alleged herein, Individual Defendants are liable to Solace Hospice.

64. By reason of the foregoing, Plaintiffs have sustained and will continue to sustain damages and injuries for which it has no adequate remedy at law as set forth in the damages paragraph below.

## FIFTH CAUSE OF ACTION
## CONVERSION

65. Plaintiffs incorporate by reference the allegations set forth above as though fully restated herein.

66. Individual Defendants have misappropriated and converted corporate funds and assets of the Corporation, without the authorization, permission of the consent of Plaintiffs.

67. Plaintiffs request the Court to order Individual Defendants to return all funds that they converted from the Corporation and to enjoin them from appropriating any of these funds for their personal use in the future.

68. Plaintiffs request that they be awarded costs, attorneys fees, as well as compensatory and punitive damages for these willful, reckless, wanton and intentional acts taken against the best interest of the Corporation.

69. By reason of the foregoing, Plaintiffs have sustained and will continue to sustain damages and injuries for which it has no adequate remedy at law as set forth in the damages paragraph below.

## SIXTH CAUSE OF ACTION
## CIVIL CONSPIRACY

70. Plaintiffs incorporate by reference the allegations set forth above as though fully restated herein.

71. At all times mentioned herein, Individual Defendants operated under an agreement between two or more persons or entities to accomplish unlawful purposes. Additionally, each Defendant committed overt acts in furtherance of this conspiracy to conceal the dangerous condition causing damage to Plaintiffs.

72. By reason of the foregoing, Plaintiffs have sustained and will continue to sustain damages and injuries for which it has no adequate remedy at law as set forth in the damages paragraph below.

## SEVENTH CAUSE OF ACTION
## AIDING AND ABETTING

73. Plaintiffs incorporate by reference the allegations set forth above as though fully restated herein.

74. All who actively participate in any manner in the commission of a tort, or who command, direct, advise, encourage, aid or abet its commission are jointly and severally liable therefor. Individual Defendants utilized their combined efforts to effect transactions which generated excessive profits for themselves and with a total disregard for Plaintiffs. Individual Defendants made fraudulent representations to Plaintiffs. Individual Defendants acted to conspire and to act in a manner which was calculated to intentionally harm Plaintiffs.

75.     As a result of such aiding and abetting, Plaintiffs have been damaged in the amount set forth in the damage paragraphs below.

## EIGHTH CAUSE OF ACTION
## DECLARATORY JUDGMENT

76.     Additionally, or alternatively, Plaintiffs seek a judgment pursuant to 28 U.S.C. Section 2201 and Federal Rule of Civil Procedure 57 declaring their rights as shareholders of Solace Hospice and applicable law.

77.     Specifically, Plaintiffs seek a judgment declaring that Rick and Megan own 33.33% of Solace Hospice and that Shannon owns 33.14% of Solace Hospice.

## REQUEST FOR INJUNCTIVE RELIEF

78.     Plaintiffs incorporate by reference the allegations set forth above as though fully restated herein.

79.     Plaintiffs request that the Court issue an injunction against Individual Defendants prohibiting the transfer, sale or disposal of any assets of the Corporation.

80.     Plaintiffs further request that an injunction be issued barring Individual Defendants from selling their stock in the Corporation, buying more stock in the Corporation or terminating the employment of any employee of the Corporation.

81.     Plaintiffs would show that failure to issue an injunction could cause irreparable injury to Plaintiffs and the Corporation, and respectfully requests that the Court set this matter for a hearing and issue an injunction enjoining Individual Defendants from transferring or disposing of any corporate assets, or assets which have been acquired with corporate funds until this matter can be heard at a trial on the merits.

82.     Plaintiffs further request that the Court order that under no circumstances shall any withdrawals be made or checks written from any corporate bank account of Corporation without

the signatures of all Plaintiffs and Individual Defendants and that the Court further order that no new accounts be opened in the corporate name or with corporate funds without the written authorization of all Plaintiffs and Individual Defendants.

83. Additionally Plaintiffs request that an injunction be issued in accordance with Miss. Code § 79-4-3.04 which authorizes the court to enjoin or set aside all ultra vires acts, if equitable and if all affected persons are parties to the proceeding, and may award damages for loss (other than anticipated profits) suffered by the corporation or another party because of enjoining the unauthorized act.

## REQUEST FOR ACCOUNTING

84. Plaintiffs incorporate by reference the allegations set forth above as though fully restated herein.

85. Plaintiffs are entitled to an accounting of all of the financial transactions made by Solace Hospice or on behalf of Solace Hospice by Individual Defendants since the inception of the corporation.

86. Plaintiffs request that the Court hold an immediate hearing to appoint an independent forensic accountant, with no previous connection to Solace Hospice, to audit the Corporation and that the cost of the services of said accountant be assumed by the Corporation or, alternatively, by Individual Defendants.

87. Plaintiffs request that the Court order Individual Defendants to provide a complete, full and documented accounting of the following:

    a) Any and all documents including, but not limited to, bank statements, transactions, deposits, withdrawals, cancelled cheeks, and contracts relating to the Corporation;

b) Any and all bank accounts and related documents wherein funds have been withdrawn or deposited in connection to the Corporation;

c) A copy of the Articles of Incorporation and Bylaws of the Corporation and any amendments thereto;

d) All funds received by or disbursed from the Corporation, an accounting of where said funds have been deposited, and an accounting of what this money has been utilized for, including, but not limited to rent money, money from investments, or any other source of income, payments of salaries, disbursements to personal bank accounts;

e) All assets received by and all assets disbursed from the Corporation, an accounting of what said assets have been used for; if any of said assets have been converted to cash, an accounting of where said funds have been deposited;

f) An accounting of any usage of funds, assets, and equipment of the Corporation, where said funds have been deposited, and an accounting of what this money has been utilized for;

g) The names, addresses and telephone numbers of all persons who have authority to act in the name of the Corporation, and the documents purporting to grant such authority;

h) The names, addresses and telephone numbers of all persons who are employees of Corporation, their job titles, salaries and compensation packages and the length of time they have worked for the Corporation;

i) Evidence of any and all transfers or attempted transfers of any personal property, tangible or intangible, owned by the Corporation;

j) Evidence of any and all attempts to sell, transfer or partition any real property held by Corporation;

k) Evidence of any attempted sale of the stock of the Corporation owned by Individual Defendants; and

l) Evidence of any and all transfers of corporate funds for nonbusiness assets or nonbusiness purposes.

## DAMAGES

88. Plaintiffs incorporate by reference the allegations set forth above as though fully restated herein.

89. Taking into consideration damages of every nature and kind which may be recovered by Plaintiffs, Plaintiffs have been damaged in an amount to be proven at trial but not less than $75,000.00.

## PUNITIVE DAMAGES

90. Plaintiffs incorporate by reference the allegations set forth above as though fully restated herein.

91. At all times mentioned herein, Individual Defendants acted with actual malice and/or gross negligence which evidences a willful, wanton, or reckless disregard for others, and such actions were so oppressive and overbearing that in order to punish the wrongdoer and deter similar misconduct in the future, Individual Defendants should be subject to punitive damages. Specifically, after considering Individual Defendants' financial condition and net worth, the nature and reprehensibility of Individual Defendants' wrongdoing, Individual Defendants' awareness of the amount of harm being caused, Individual Defendants' motivation in causing such harm, and the duration of Individual Defendants' misconduct and attempts to conceal such misconduct, Individual Defendants' should be subject to punitive damages in an amount bearing some

proportion to Individual Defendants' worth and income to be proven at trial and decided by the jury and not subject to any statutory limitations.

## **PRAYER**

WHEREFORE, Plaintiffs demand judgment as follows:

A. Determining that this action is a proper derivative action maintainable under the law and that demand was excused;

B. Directing Individual Defendants to account to Solace Hospice for all damages sustained or to be sustained by the Company by reason of the wrongs alleged herein, including payment of the penalty to Medicare;

C. Directing Solace Hospice to take all necessary actions to reform its corporate governance and internal procedures to comply with applicable laws and protect the Company and its shareholders from a recurrence of the events described herein, including, but not limited to, a shareholder vote to officially adopt By-Laws and Amended Articles of Incorporation, appointing or creating Board-level committees as necessary and executive officer positions charged with the oversight of Individual Defendants, and taking such other action as may be necessary to place before shareholders for a vote on corporate governance policies;

D. Awarding to Solace Hospice restitution from Individual Defendants and ordering disgorgement of all profits, benefits and other compensation obtained by Individual Defendants;

E. Awarding Plaintiffs the costs and disbursements of this action, including reasonable attorneys' and experts' fees and expenses;

F. Appointing a forensic accountant to review and investigate the business of Solace Hospice and advise the Court and Plaintiffs of his or her findings; and

G. Granting such other and further relief as the Court may deem just and proper.

Respectfully submitted, this the 5th day of April, 2021.

                               SHANNON DILLON, RICHARD THOMAS AND
                               MEGAN THOMAS, PLAINTIFFS


BY     */s/ William Lee Guice III*
         WILLIAM LEE GUICE III MSBN 5059
         MARIA MARTINEZ MSBN 9951
         RUSHING & GUICE, P.L.L.C.
         P. O. BOX 1925
         BILOXI, MS  39533
         TELEPHONE: (228) 374-2313
         FAX:  (228) 875-5987
         bguice@rushingguice.com
         mmaartinez@rushingguice.com
         ATTORNEYS FOR PLAINTIFFS

W:\9679\working\P\21-0401 Complaint MM.docx