IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**SHANNON DILLON,** **PLAINTIFFS**
**RICHARD THOMAS, and**
**MEGAN THOMAS**

v.   Civil No. 1:21cv109-HSO-RHWR

**CARLEY WAYNE DAVIS, JR.,**
**LISA NORRIS DAVIS, and**
**SOLACE HOSPICE INC.** **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION [64] FOR SUMMARY JUDGMENT

BEFORE THE COURT is the Motion for Summary Judgment [64] filed by Defendants Carley Wayne Davis, Jr., Lisa Norris Davis, and Solace Hospice, Inc. The Motion [64] is fully briefed. Having considered Defendants' Motion [64] on its merits, the relevant pleadings, the record, and relevant legal authority, the Court is of the opinion that the Motion [64] for Summary Judgment should be denied.

I.  BACKGROUND

A.  Factual background

Plaintiffs Megan Thomas ("Megan") and her husband, Richard Thomas ("Richard"), are both registered nurses. Compl. [1] at 3. Richard's aunt, Plaintiff Shannon Dillon ("Shannon"), owns and operates a hospice in Louisiana. *Id.* Defendant Lisa Davis ("Lisa") began working at Shannon's hospice in January 2012. *Id.* Plaintiffs allege that in April 2017, Lisa approached them about opening a hospice in Mississippi as a group, along with her husband, Defendant Carley Davis,

1

Jr. ("Carley"). Ex. [71-16] at 51. The name of the proposed hospice was Solace Hospice, Inc. ("Solace"). Compl. [1] at 4.

On April 10, 2017, Lisa and Carley completed an application with the Mississippi State Department of Health for a license for Solace. Compl. [1-3] at 4. The application called for the owners of the hospice to be listed, and Defendants listed as the owners, with their respective percentages of the company, as "Carley & Lisa Davis . . . 33.3%," "Richard & Megan Thomas . . . 33.3%," and "Shannon Dillon . . . 33.4%." Ex. [71-5] at 5. In addition, the application identified the members of the hospice's governing body as "Megan Thomas . . . Secretary," "Richard Thomas . . . Community Liaison [sic]," "Carley Davis . . . CFO," and "Shannon Dillon . . . Director of Operations." *Id*. Carley has since testified that he misunderstood what the application was calling for, and that by listing the percentages he was only referring to the parties' respective profit-sharing percentages, not their percentage of actual ownership of the company. Ex. [8-1] at 2.

Carley filed Solace's Articles of Incorporation and Bylaws with the Mississippi Secretary of State on April 10, 2017, and authorized six shares of stock. Ex. [71-5] at 10. The Bylaws were executed by Megan as Secretary of the Company. Ex. [1-2] at 5. The same day that the Articles of Incorporation were filed with the State, Carley texted Plaintiffs that he chose six shares of common stock, "2 for y'all [meaning Richard and Megan Thomas], 2 for us [meaning Carley and Lisa Davis], and 2 for shannon [sic]." Ex. [71-16] at 43. However, the corporate ledger and stock certificate both specify that all six shares belong to Carley. Ex. [71-26].

On July 5, 2017, the Mississippi State Department of Health, Health Facilities Licensure & Certification Division, granted a hospice license to Solace, Ex. [71-5] at 2, and it began accepting patients in August 2017, Comp, [1-1] at 5. Plaintiffs allege that they received their first disbursement from Solace in March 2018. *Id.*

Plaintiffs claim that Carley applied for and received over $300,000.00 of COVID-19 Paycheck Protection Program ("PPP") loans on behalf of Solace, without obtaining authorization from the Board of Directors or shareholders. *Id.* at 6. Additionally, they assert that a Medicare audit revealed a 100% error rate, which left Solace with a $182,041.55 fine. *Id.* Plaintiffs contend that, collectively, they are the majority shareholders of Solace, and that Defendants have "entered upon a scheme to hijack said business and freeze Plaintiffs out of the control and benefits of the corporate enterprise." *Id.* at 1.

B.  Procedural background

Plaintiffs filed suit in this Court on April 5, 2021, invoking diversity jurisdiction under 28 U.S.C. §1332. Compl. [1]. The Complaint [1] is styled as both a derivative and a direct action, and advances seven causes of action against Lisa, Carley, and Solace: (1) breach of fiduciary duty; (2) corporate waste; (3) unjust enrichment; (4) gross mismanagement; (5) conversion; (6) civil conspiracy; and (7) aiding and abetting. The Complaint [1] also contains a request for an accounting.

Compl. [1] at 14. Plaintiffs further seek a declaratory judgment stating their rights and percentages as owners and shareholders of Solace. *See* Compl. [1] at 8-13. [1]

Defendants filed an initial Motion [8] to Dismiss, or in the Alternative, for Summary Judgment on April 30, 2021, contending that this Court was without subject-matter jurisdiction because Plaintiffs lacked standing to pursue their claims, since Carley owned all six shares of Solace. Plaintiffs responded with a Motion [16] under Federal Rule of Civil Procedure 56(d) that more discovery was necessary in order to counter Defendants' Motion. The Court conducted a hearing on the Motions on May 17, 2021, concluded that limited discovery on the issue of jurisdiction was appropriate, Text Only Order, May 25, 2021, and denied the Motion [8] to Dismiss without prejudice, with leave to reassert at the close of discovery, Text Only Order, May 27, 2021.

Following the conclusion of limited discovery, Defendants have now renewed a Motion [64] for Summary Judgment, arguing that Plaintiffs are not shareholders and lack standing to bring these claims. Mot. [64] at 1. As evidence, Defendants present Carley's stock certificate which shows him as the sole shareholder of all six shares of company stock. Ex. [22-6]. Defendants also contend that Plaintiffs' claims

---

[1] For closely held corporations, courts may treat a derivative action as a direct action by a member, and therefore excuse the written-demand requirement, when it does not "(i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of the creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested parties." *Derouen v. Murray*, 604 So. 2d 1086, 1091 n.2 (Miss. 1992); *see* Miss. Code Ann. § 79–4–7.40.

are subject to the statute of frauds and are time-barred by the three-year statute of limitations contained at Mississippi Code § 15-1-49. Mem. [65] at 11-12.

Plaintiffs respond that Defendants repeatedly made assurances to them that Shannon held a one-third ownership in the company, and that Megan and Richard collectively held a one-third ownership in the company. Resp. [71] at 1-2. Plaintiffs claim that the company ledger lists Carley as the sole shareholder because Defendants "engaged in a conspiracy to change all corporate documentation related to ownership to indicate that [Carley] was the only shareholder of Solace Hospice." *Id.* at 2.

## II. DISCUSSION

A.  Summary judgment standard

"[T]he jurisdictional issue of standing is a legal question," and "[t]he party invoking federal jurisdiction bears the burden of establishing standing." *Crane v. Johnson*, 783 F.3d 244, 250 (5th Cir. 2015) (quotation omitted). Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject [-]matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998) (quotation omitted). When the Court's subject-matter jurisdiction is challenged, the party asserting jurisdiction bears the burden of showing jurisdiction is proper. *King v. U.S. Dep't of Veterans Affs.*, 728 F.3d 410, 413 (5th Cir. 2013). A court has the power to dismiss a complaint for lack of subject-matter jurisdiction on any one of three bases: "(1) the complaint alone; (2) the

complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

A court should grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court views all facts and relevant inferences in the light most favorable to the nonmovant. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010). "When the defendant moves for summary judgment because of lack of standing, however, the plaintiff must submit affidavits and comparable evidence that indicate that a genuine issue of fact exists on the standing issue." *Cramer v. Skinner*, 931 F.2d 1020, 1025 (5th Cir. 1991).

B.   The parties' arguments

Defendants maintain that Plaintiffs are not shareholders and therefore lack standing to bring their claims. Mem. [65] at 1. Defendants further argue that even if there was an oral agreement for Plaintiffs to own shares of Solace, such an agreement would be barred by the statute of frauds, *id.* at 3-4, and even if not, the pertinent statute of limitations bars their claims, *id.* at 11-12.

Plaintiffs counter with evidence which they claim shows that on April 10, 2017, Carley sent a text message to Plaintiffs, purportedly stating how the shares were to be distributed amongst them. *See* Ex. [71-16] at 42 ("2 for y'all [meaning Richard and Megan Thomas], 2 for us [meaning Carley and Lisa Davis], and 2 for shannon [sic]"). Plaintiffs also point to evidence that the initial application for

6

Solace's license with the Mississippi State Department of Health listed ownership in a manner which was consistent with this stock division, Ex. [71-5] at 5, and that because the State Department of Health has reported that it has not received a Change of Ownership form, the original ownership split remains in place, Ex. [71-5] at 28.

Defendants have presented contradictory evidence, such as subsequent annual licensing forms where Carley is identified as the sole owner of Solace, Ex. [64-4] at 3, along with a Schedule K-1 (Tax Form 1065) listing Carley as the sole shareholder, Ex. [71-24] at 6. They further rely on the certificate of common shares, which plainly shows Carley as the only stockholder. Ex. [71-26].

The parties also disagree on whether issues of material fact exist as to when the statute of limitations began to run on Plaintiffs' claims. Mem. [65] at 11-12; Resp. [71] at 18. Defendants assert that even if Plaintiffs have standing, their claims are time-barred, because Plaintiffs had not received necessary tax documents for four years, placing them on notice that they were not shareholders or owners of Solace. Mem. [65] at 11. Defendants maintain that Plaintiffs should have been aware they were not shareholders because they were not receiving tax documents, *id.*, and because Shannon was a sophisticated plaintiff as an owner of another hospice in Louisiana who should have been aware of the injury when she did not receive a K-1 form, *id.* Shannon responds that she did in fact investigate, and that in December 2019 she asked Lisa via text message whether she still owned

7

part of Solace. Ex. [71-19]. According to Plaintiffs, instead of denying Shannon's ownership interest, Lisa confirmed that she was still an owner:

> Shannon: Ha, I just been getting some bad vibes. I was just wondering do I still owed [sic] part of Solace? I don't need anything I just need to know. Thanks. Shannon.
> Shannon: Own
> Lisa: Oh Lord who is giving you bad vibes? Nothing has changed!
> Shannon: I think it old age. I will be ok. Just been crying a lot. Love ya!!!
> Shannon: I may need to go up on Ativan. Lol
> Lisa: I'm sorry. I hate that it is so difficult and awkward.. I thought time would make things better.. I know it's hard but nothing has changed as far as Solace. Love ya and praying (heart emoji). And I've come to the conclusion I'm in need of Ativan myself.. just half of a half (sad face emoji).

Ex. [71-19].

Plaintiffs contend that, although they were not receiving K-1 forms, they were receiving other tax documents from Solace. Ex. [71-20] at 29. They assert that Defendants and Plaintiffs collectively decided to incorporate Solace as a C Corporation, "to prevent less taxing on us personally." *Id.* Instead, however, Defendants incorporated Solace as an S Corporation, Ex. [71-24] at 10, for which shareholders receive a K-1 form to report the income, losses, and dividends of a business on their personal tax return, Ex. [71-28]. For a C Corporation, a shareholder will receive a 1099 form from the corporation listing any dividends. *Id.* Plaintiffs maintain that because they were receiving 1099s, they assumed that their ownership interests were protected, and even confirmed with their accountant that they were receiving the correct documents for a C Corporation. Ex. [71-20] at 28.

C.  Analysis

1.  Whether Plaintiffs have standing

Defendants maintain that Plaintiffs lack standing to pursue their claims because they lack an ownership interest in Solace. Article III of the United States Constitution confines this Court to adjudicating actual "cases" and "controversies." U.S. Const. Art. III, § 2, cl.1. The United States Supreme Court has defined standing as whether the litigant is entitled to have a court decide the merits of the dispute. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). The party invoking federal jurisdiction bears the burden of proof in establishing each of the following requirements for standing:

> (1) an injury in fact that is concrete and particularized, (2) that injury must be caused by the defendant, and (3) it must be likely that the Court can redress the injury.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

"Failure to establish any one [of these requirements] deprives the federal courts of jurisdiction to hear the suit." *Rivera v. Wyeth–Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002). "The question of constitutional standing must be decided prior to prudential standing and the merits of the case." *Kendall v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 388 F. Supp. 2d 755, 758 (N.D. Miss. 2005).

As a general matter, if Plaintiffs were not shareholders, they would not have standing to bring suit on behalf of the corporation. *See generally Lewis v. Knutson*, 699 F.2d 230, 238 (5th Cir. 1983) (a plaintiff "must demonstrate that he owned stock in the corporation at the time of the transaction of which he complains and

9

throughout the pendency of the suit, which includes the bringing of the suit and its prosecution."). Solace's Articles of Incorporation reflect that six shares of company stock were issued, Ex. [18-2], and Carley has presented what he asserts is a certificate of common shares accounting for all six of these shares issued in his name, Ex. [71-26].

Under Mississippi law, however, "[s]hares may *but need not* be represented by certificates." Miss. Code. Ann. § 79-4-6.25 (emphasis added). In addition, Mississippi Code § 79-4-6.25(d) provides that "[e]ach share certificate (1) must be signed (either manually or in facsimile) by two (2) officers designated in the bylaws or by the board of directors . . ." Miss. Code Ann. § 79-4-6.25(d). Carley's certificates do not appear to meet this requirement, as the certificate he has presented contains only one signature, his own. Ex. [71-26] at 2. There is no second signature that satisfies the requirement of Mississippi Code § 79-4-6.25(d). Ex. [71-26] at 2. Additionally, Plaintiffs have presented affidavits which aver that they own shares in Solace, Ex. [71-1] [71-2] [71-3], and argue that the Bylaws do not require that the company issue stock certificates to its shareholders, Ex. [71-5] at 16 ("The corporation *may* issue shares of the corporation's stock without certificates.") (emphasis added). Plaintiffs also present text messages between themselves and Defendants that discuss Plaintiffs' ownership in Solace. Ex. [71-16] [71-17] [71-18].

The foregoing evidence presents material fact questions regarding the validity of Carley's stock certificate and whether it satisfies the requirements of Mississippi law. It also creates a fact question on ownership. Viewing the facts in

the light most favorable to Plaintiffs as the nonmovants, genuine issues of material fact exist on the ownership of Solace, and summary judgment on the standing issue would not be appropriate at this time.

2. <u>Whether the statute of frauds bars Plaintiffs' claims</u>

Defendants next raise Mississippi's statute of frauds, Mississippi Code § 15–3–1, which serves as an affirmative defense to the enforcement of certain oral contracts. *Davis v. Stegall*, 246 Miss. 593, 598 (1963). Under Mississippi's statute of frauds, five categories of contracts are not enforceable unless they are in writing; of relevance here, one of these categories is "[a]ny agreement which is not to be performed within the space of 15 months." Miss. Code Ann. § 15–3–1; *Beane v. Bowden*, 399 So. 2d 1358, 1361 (Miss. 1981). "The possibility of performance within . . . 15 months takes the contract out of the operation of the statute." *U.S. Fin. Co. v. Barber*, 157 So. 2d 394, 397 (Miss. 1963); *see Am. Chocolates, Inc. v. Mascot Pecan Co., Inc.*, 592 So. 2d 93, 93 (Miss. 1991).

Defendant argues that there was never a written agreement between the parties regarding ownership in Solace, and that any oral agreement would be barred by the statute of frauds. Mem. [65] at 3-4. However, because shares of stock in a corporation are capable of being issued within fifteen months, the statute of frauds does not apply here. *See Jones v. McGahey,* 187 So. 2d 579, 584 (Miss. 1966) (holding that an agreement to purchase stocks did not fall within the statute of frauds, because "[t]he shares were to be purchased as soon as possible or whenever they could be obtained"). Because the creation and issuance of shares evidencing

11

ownership in Solace could have been completed in less than fifteen months, the statute of frauds does not bar Plaintiffs' claims.

3.  <u>Whether the relevant statute of limitations bars Plaintiffs' claims</u>

The parties do not dispute that the relevant statute of limitations for all claims in this case is the catch-all provision set forth at Mississippi Code § 15-1-49. Mem. [65] at 11-14; Resp. [71] at 17-18. Section 15-1-49 provides that

> (1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.
> (2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.

Miss. Code Ann. § 15–1–49.

The Court concurs with the parties that Mississippi Code § 15-1-49 provides the applicable statute of limitations for each of Plaintiffs' claims. *See Anderson v. LaVere*, 136 So. 3d 404, 411 (Miss. 2014) (applying Miss. Code § 15–1–49 for unjust enrichment and conversion claims); *Hooker v. Greer*, 81 So. 3d 1103, 1111 (Miss. 2012) (applying this section for requests for accounting); *Carter v. Citigroup Inc.*, 938 So. 2d 809, 817 (Miss. 2006) (applying this section for breach of fiduciary duty and conspiracy claims); *Jones v. KPMG LLP*, No. 1:17CV319-LG-RHW, 2018 WL 5018469, at *2 (S.D. Miss. Oct. 16, 2018) (noting that no Mississippi court has recognized a cause of action for aiding and abetting breach of fiduciary duty, but making an *Erie* guess that Mississippi courts would find that such a claim exists, and that Mississippi Code § 15–1–49 would be the applicable statute of limitations);

*Natchez Reg'l Med. Ctr. v. Quorum Health Res., LLC*, 879 F. Supp. 2d 556, 575 (S.D. Miss. 2012) (applying this section for corporate waste and mismanagement claims).

The record is clear that more than three years passed between the formation of Solace and filing of Plaintiff's lawsuit. Plaintiffs filed suit on April 5, 2021, almost four years after Solace was incorporated. Compl. [1] at 3. However, Plaintiffs invoke the discovery rule and argue that there are genuine issues of material fact as to when their claims accrued. Resp. [71] at 17-18.

Mississippi Code § 15–1–49(b) provides that the three year statute of limitations does not begin to run until the plaintiff discovered, or reasonably should have discovered, the injury. "[T]o claim benefit of the discovery rule, a plaintiff must be reasonably diligent in investigating the circumstances surrounding the injury." *Wayne Gen. Hosp. v. Hayes*, 868 So. 2d 997, 1001 (Miss. 2004). The discovery exception "may be applied when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act." *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 168 (Miss. 1999) (citing *Smith v. Sneed*, 638 So. 2d 1252, 1257 (Miss. 1994)).

The Mississippi Supreme Court has held that the critical question "is whether, in a summary judgment context, we can identify as a matter of law, the point at which [the plaintiff] knew or should have known or should have made an inquiry, based on the information available to him." *Weathers v. Metro. Life Ins. Co.*, 14 So. 3d 688, 692 (Miss. 2009) (in an insurance dispute, a question of fact existed as to when a reasonable policy holder should have realized from the available

information that the policy was not performing as promised). The court in that case held that the relative complexity of the policy terms, along with subsequent reassurances from the defendant insurance agent when plaintiffs questioned the situation, created a genuine issue of material fact as to whether the plaintiffs should have been on notice to investigate further. *Id.* at *6.

Defendants here argue that the statute of limitations has expired, Mem. [65] at 5, maintaining that "[n]o Plaintiff asked any questions about corporate meetings or notices," and "[n]o Plaintiff has requested any tax records or business records showing any financial interest in Solace." *Id.* Defendants further contend that Plaintiffs should have investigated their status as shareholders before April 2018. Mem. [65] at 7.

Based upon the record evidence, the Court finds that genuine issues of material fact exist as to whether or when Plaintiffs were, or should have been, on notice of any need to investigate their rights further. Shannon texted Lisa in December 2019, within the limitations period, to confirm that she still owned part of Solace, to which Lisa responded, "nothing has changed." Ex. [71-19]. Furthermore, Carley would have lunch meetings with Plaintiffs, paid for with the Solace credit card, which Carley referred to as "board meetings." Ex. [71-2] at 5.

Also of significance, viewing the evidence in the light most favorable to Plaintiffs, Carley told them that Solace would be incorporated as a C Corporation, Ex. [71-20] at 7, when in actuality he incorporated Solace as an S Corporation, Ex. [71-25]. When Plaintiffs received their tax documents in 2019 and 2020, they

14

received 1099 tax forms from Solace, Ex. [71-20] at 29, which were consistent with the type of tax documents Plaintiffs would expect to receive from ownership of shares in a C Corporation, Ex. [71-28]. Thus, fact questions exist regarding whether the issue of tax documents would have triggered the discovery rule as Defendants argue, specifically whether a reasonable shareholder would have realized from the available information that there was any issue of ownership. Plaintiffs were receiving tax forms that they contend were consistent with their belief that they were shareholders in a C Corporation, which is what they assert they had been told by Carley. Ex. [71-20] at 7. According to Richard, his accountant advised him that he was receiving the correct tax documents for ownership in a C Corporation. Ex. [71-2] at 28.

Given the relative complexity of corporate law, coupled with the subsequent reassurances by Defendants, on the present record the Court cannot at this stage of the case "identify as a matter of law, the point at which [the plaintiff] knew or should have known or should have made an inquiry, based on the information available to him." *Weathers*, 14 So. 3d at 692. Similarly to *Weathers,* which involved a complex insurance policy and agents who repeatedly reassured plaintiffs when they questioned their policy, this case involves a complex area of law and subsequent reassurances from Defendants when they questioned their rights as shareholders. For these reasons, material questions of fact exist as to the statute of limitations issue, and summary judgment would not be appropriate.

III.  CONCLUSION

Because at this stage of proceedings, the record evidence presents material questions of fact on the issue of standing and on the applicability of the statute of limitations, Defendants' Motion for Summary Judgment [64] should be denied. To the extent the Court has not specifically addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendants Carley Wayne Davis, Jr., Lisa Norris Davis, and Solace Hospice Inc.'s Motion [64] for Summary Judgment is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendants Carley Wayne Davis, Jr., Lisa Norris Davis, and Solace Hospice, Inc., shall file their Answer in accordance with the Federal Rules of Civil Procedure and Uniform Local Rules, at which point the Magistrate Judge will schedule a Case Management Conference.

**SO ORDERED AND ADJUDGED**, this the 29th day of March, 2022.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE